**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| NELI MEDVEDEVU, on behalf of herself, all others similarly situated, and the general public,<br><br>Plaintiff,<br><br>v.<br><br>REGIONAL WOMEN'S HEALTH GROUP, LLC,<br><br>Defendant. | Case No. 2:26-cv-02455 |

**DEFENDANT REGIONAL WOMEN'S HEALTH GROUP, LLC'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS**

Defendant Regional Women's Health Group, LLC ("Defendant"), by and through its undersigned counsel, respectfully submits this Reply to Plaintiff's Opposition to Motion to Dismiss.

## I. INTRODUCTION

Plaintiff's Opposition to Motion to Dismiss (hereinafter, "Opposition") mischaracterizes Defendant's arguments and misconstrues relevant case law. Additionally, the Opposition relies heavily on Rule 8 Fed. R. Civ. P., arguing that the Complaint's failure to include more specific allegations is justified because the parties are only at the pleading stage. But as shown further below, Plaintiff cannot invoke Rule 8 to avoid providing the facts that she herself should know and which are required to survive a motion to dismiss.

For the reasons discussed herein, Defendant respectfully reiterates its request for the Court to dismiss each of Plaintiff's claims pursuant to Rules 12(b)(1) and 12(b)(6).

## II. FACTUAL BACKGROUND

As the Court is familiar with the factual background of this case from Defendant's Motion, Defendant will not rehearse that background here.

## III. ARGUMENT

### A. Plaintiff's Reliance on Rule 8 Does Not Save Her Failure to Meet the Requirements of Rule 12.

Plaintiff's Opposition relies on Rule 8 to justify the lack of more specific allegations in her Complaint. *See* Opp. at 2, 10, 23. But in making this argument, Plaintiff mischaracterizes Defendant's argument and makes a significant admission concerning her own lack of knowledge about the critical facts at issue, and therefore her inability to meet the pleading requirements of Fed. R. Civ. P. Rule 8(a)(2).

#### 1. *Plaintiff Mischaracterizes Defendant's Argument about the Level of Factual Specificity Required.*

Plaintiff portrays the Defendant as seeking to impose a heightened pleading standard, *id*. at 2, and asking for a depth of detail the Plaintiff could not know or have access to at this stage in the litigation. For example, the Plaintiff states that she "need not, before discovery, plead with precision what appears in Axia's server logs, its vendors' advertising records, or the network payloads generated by covert tracking technologies." *Id*. But nowhere does Defendant argue that Plaintiff must produce server logs, advertising records, network payloads, or anything else comparably specific or beyond what Plaintiff could or should know at this time.

On the contrary, Defendant's Motion rests on the bedrock pleading principle that "a complaint must contain sufficient factual matter to state a plausible claim." Mot. at 11 (citing *Ashcroft v. Iqbal*, 556 US. 662, 678 (2009)). Allegations "showing only a possibility of liability are insufficient." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and *Hartley v.*

*Urban Outfitters Inc*., 740 F. Supp. 3d 410, 416 (E.D. Pa. 2024)).

Here, the only specific information Plaintiff alleges entering into the Website is her zip code. Mot. at 7. As pointed out by Defendant, Plaintiff does not allege that she entered or transmitted any personally identifying information, whether in searching or browsing the Website, making an appointment, or paying a bill. Mot. at 5, 7, 18. Plaintiff refers generally to her "messages, reports, and communications," Compl. ¶¶ 88-91, and to "everything" browsed or searched, *id*. ¶ 88, but she does not identify any personal information contained in those messages, reports, communications, or searches. Plaintiff simply asserts that her PHI was disclosed and intercepted. Opp. at 2, 15. As those are conclusions unsupported by well-pleaded facts, Plaintiff's claims must be dismissed.

### 2. *Plaintiff's Professed Lack of Knowledge About Her Own Communications Leads to the Reasonable Inference She Cannot Identify any Personal Information Allegedly Disclosed or Intercepted.*

Plaintiff's argument that she has no obligation, at this stage, to identify the specific personal information allegedly disclosed leads her to essentially admit that she may not know whether such information exists. In discussing her Electronic Communications Privacy Act (ECPA) claim, Plaintiff argues that she is not required "to reproduce the communication verbatim." Opp. at 10. Citing *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 137-139 (3d Cir. 2015), Plaintiff further states that "Axia's demand for the actual search terms, form entries, or network payloads seeks evidence held by Axia and its tracking partners, not facts Rule 8 requires before discovery . . . ." Opp. at 10.

Similar to the above, Defendant never stated that the Plaintiff had to produce the contents of her messages "verbatim." Rather, Defendant argued that Plaintiff has alleged only general Website activity and has not identified any substantive communication. Mot. at 12. This argument is not a

request for a communication "verbatim"; it is a request for the minimal showing of facts required for a non-conclusory, plausible claim. The mere fact *that* Plaintiff may have communicated information to the Website is different from *what* the Plaintiff allegedly communicated.

Additionally, the Plaintiff cannot rely on *In re Google Cookie Placement* to avoid pleading more specific allegations. In *In re Google Cookie Placement*, the court addressed whether a Universal Resource Locator (URL) constituted "extrinsic information used to route a communication" or instead served as "the communicated content itself." *Id*. at 135. The court surveyed various authorities and found that if a URL "is . . . part of the substantive information conveyed to the recipient, then by definition it is 'content.'" *Id*. at 137. Because the plaintiffs in *In re Google Cookie Placement* alleged that "defendants generally acquired and tracked the plaintiffs' internet usage," the court was "satisfied that this scheme, if it operated as alleged, involved the collection of at least some 'content' within the meaning of the Wiretap Act." *Id*. at 139.

In other words, the holding in *In re Google Cookie Placement* turned on the court's finding that the URLs at issue *were content* putatively subject to the ECPA. In this case, however, Plaintiff is *not* alleging that items of information traditionally considered routing information are actually content. Rather, Plaintiff is arguing that she does not have to allege any specific content at all. Opp. at 10. She is alleging that it is sufficient, at this stage, to allege that she input search terms and form entries. That proposition, however, is not what *In re Google Cookie Placement* stands for. Plaintiff's reliance on that case, therefore, is inapposite.

Furthermore, assuming for the sake of argument that Plaintiff did input search terms or enter data into Website forms, she argues in her Opposition that such information *is held by Axia and its tracking partners* and therefore are not facts that, under Rule 8, she should have to produce prior to discovery. Opp. at 10. This professed lack of knowledge about her own communications,

combined with her repeated references to unspecific "messages, reports, and communications," lead to the reasonable inference that Plaintiff is not able to identify any specific personal information she transmitted to the Website. Without such an ability, Plaintiff cannot make the required showing for relief. [1]

B. Plaintiff Incorrectly Interprets and Applies *Adair*.

Recognizing that *Adair v. Cigna Corp. Servs., LLC*, 818 F. Supp. 3d 641 (E.D. Pa. 2026) requires more specific allegations than what Plaintiff has provided, Plaintiff argues that *Adair* "did not hold that anything less must fail" and that "a decision sustaining one complaint does not convert its particular details into pleading elements." Opp. at 6. In support of that argument, Plaintiff cites *Adair*, specifically at 818 F. Supp. 3d at 662-63. But neither that citation nor *Adair* generally stands for the proposition that less specific allegations could be sufficient. In fact, the *Adair* decision implies the opposite: After summarizing the plaintiff-specific allegations, the court stated, "*Although additional examples would fortify the Amended Complaint,* Plaintiffs have sufficiently alleged that the technologies captured information pertaining to their patient status, medical conditions, procedures, medications, providers, and insurance benefits." *Adair*, 818 F. Supp. 3d at 663 (emphasis added). In that emphasized language, the court is signaling a preference for additional allegations. While the court offers no mandatory test, it is nevertheless providing direction to future litigants about the pleading requirements in tracking cases.

[1] In discussing her negligence claim, Plaintiff takes note of the fact that it is only her zip code that she alleges entering into the Website. Plaintiff states, "One expressly identified input cannot be read as an admission that no other healthcare communication occurred." Opp. at 20. But what can be read as an admission is not the issue. The issue, at this stage, is what the Plaintiff has to plead and the reasonable inferences that can be drawn from the Complaint's allegations. Moreover, even assuming for the sake argument that "other healthcare communication[s] occurred," that inference *still* does not show that personal information was involved in those other communications.

Plaintiff also argues that "[i]n any event, the features Axia extracts from *Adair* are present here in substance." Opp. at 6. Plaintiff does not define "features," but a comparison of the plaintiff-specific allegations in *Adair* and the Plaintiff's allegations in her Complaint demonstrate that Plaintiff's conclusory, unspecific allegations fall short of what the court found sufficient in *Adair*.

### C. Plaintiff Mischaracterizes Defendant's Argument Concerning the Crime-Tort Exception.

In arguing against the one-party consent exception, Plaintiff relies on *Smart v. Main Line Health*, 2024 WL 2943760 (E.D. Pa. June 10, 2024) ["*Smart I*"] and *Smart v. Main Line Health*, 2026 WL 1008171 (E.D. Pa. Apr. 14, 2026) ["*Smart II*"]. According to Plaintiff, Defendant "omits that the plaintiff [in *Smart I*] amended and the court sustained his ECPA claim." Opp. at 14. Plaintiff also claims that "*Smart II* expressly rejected the same argument Axia presents here—that the alleged HIPAA violation was not sufficiently distinct from the interception itself." *Id.*

Defendant, however, did not make the argument that was purportedly rejected by *Smart II*. Moreover, *Smart I* and *Smart II* are not in tension with each other, and neither case aids Plaintiff.

#### 1. *Both* **Smart I** *and* **Smart II** *Reinforce Plaintiff's Pleading Failures*.

In *Smart II*, the court was considering the plaintiff's Second Amended Complaint, having already dismissed his Amended Complaint "because of the lack of specific factual allegations and the reliance on conclusory statements." *Smart I*, 2024 WL 2943760, at *4. Among the claims dismissed in *Smart I* was plaintiff's ECPA claim. To defeat the one-party consent rule and apply the crime-tort exception, the plaintiff argued "that Defendant [Main Line Health] violated [HIPAA] by disclosing the individually-identifiable patient health information to Meta without Plaintiff's notice or consent." *Id*. at *3 (alterations added). To support that argument, the plaintiff alleged he "used Main Line Health's website to engage in communications that included individually-identifiable patient health information about his past, present, or future health conditions, including

requests for information about specific Main Line Health providers and locations, and information about specific health conditions, treatments, and services." *Id*. at *3 (internal quotation marks and citation omitted).

The court found such allegations inadequate to satisfy the crime-tort exception. The court held it "cannot conclude from these general averments what information Plaintiff *actually communicate*d with Main Line Health via his web browsing and when exactly such information was communicated." *Id*. (emphases added). The Plaintiff "[had failed] to state what specific HIPPA-protected information *Plaintiff himself* provided to Defendant via his browsing activity that was subsequently disclosed to Meta. Without such factual allegations, the Amended Complaint consists of nothing more than bare-bone conclusions which are insufficient to withstand dismissal." *Id*. (emphasis in original; alteration added).

As in *Smart I*, the Plaintiff here has failed to allege what specific HIPAA-protected information she provided to Axia that was allegedly disclosed to the Trackers. Consequently, Plaintiff has not sufficiently pleaded a violation of HIPAA, and the crime-tort exception cannot salvage her ECPA claim.

Plaintiff, aware of the problems posed by *Smart I*, asserts that Defendant cannot "rely on *Smart I*'s factual deficiency." Oppo. at 15. But Plaintiff does not explain how her allegations are materially different than those deemed insufficient in *Smart I*. Instead, Plaintiff repeats the allegations concerning general Website activity. Opp. at 15. Under *Smart I*, plaintiff's "general averments" are insufficient to establish the crime-tort exception.

### *2.* **Smart II** ***is Not in Tension with*** **Smart I,** ***and*** **Smart II** ***is Not an Authority Against Any of Defendant's Arguments.***

*Smart II* does not aid Plaintiff or undermine *Smart I*. According to Plaintiff, Defendant "omits that [in *Smart II*] the plaintiff amended and the court sustained his ECPA claim." Opp. at 14 (citing

*Smart II*, 2026 WL 1008171, at *2-4). This language suggests that *Smart II* rejected or revised something from *Smart I*. But that is not the case.

In *Smart II*, the same plaintiff from *Smart I* had cured the deficiencies of his prior complaints. *See Smart II*, 2026 WL 1008171, at *4 ("Smart has now sufficiently alleged what communications were intercepted"). As plaintiff had met his pleading burden, the issue in *Smart II* concerning the crime-tort exception was no longer whether plaintiff was sufficiently specific about the personal information implicated. Rather, defendant's "main argument [was] that the alleged criminal use [was] not an act distinct from the interception." *Id*. at *3 (alterations added). In particular, the defendant in *Smart II* argued that "[b]ecause the Meta Collection Tools both intercept the communications and send them to Meta in one fell swoop, there is no independent or secondary act, which is required to apply the crime-tort exception." *Id*. (alteration added). The court rejected defendant's argument, finding that plaintiff had sufficiently alleged "a distinct tortious or criminal *use*" of the intercepted information. *Id*. (emphasis in original) (quoting *In re Google Cookie Placement*, 806 F.3d at 145).

Here, Defendant's Motion does not advance the "one fell swoop" argument. *See* Mot. at 16. In addition to arguing that Plaintiff has failed to identify any personal information allegedly disclosed, Defendant argues that the Complaint does not "plausibly allege the required criminal purpose" and that Plaintiff's claim is an "isolated legal conclusion" among Plaintiff's various allegations. *Id*. Therefore, Plaintiff's claim that *Smart II* "expressly rejected" Defendant's argument has no merit.

D. <u>Plaintiff's Negligence Theory Assumes the Factual Predicates that are in Dispute.</u>

Plaintiff cites *Zimmerman v. Highmark, Inc.*, 780 F. Supp. 3d. 588, 602 (W.D. Pa. 2025) in support of her argument that Defendant owed a duty of reasonable care to Plaintiff. In *Zimmerman*, which dealt with a data breach of a healthcare company (Highmark), the court stated that "those

who affirmatively collect sensitive information owe a duty to exercise reasonable care to protect against the foreseeable harm of a data breach." *Id.* at 602 (internal quotation marks and citation omitted). Because Highmark "affirmatively collected Plaintiffs' PII/PHI in its position as a health insurance and healthcare provider," such action, the court held, "gives rise to a common-law duty to prevent foreseeable harm under Pennsylvania law." *Id.* at 603.

In *Zimmerman*, the parties did not dispute that the defendant had affirmatively collected the plaintiffs' personal and sensitive health information. Here, however, that is one of the issues in dispute. Because plaintiff's allegations do not plausibly show that her personal information was implicated in alleged tracking, this Court cannot determine whether Defendant owed the type of duty articulated by *Zimmerman*. Plaintiff's negligence claim, therefore, must be dismissed.

## IV. CONCLUSION

For these reasons and those previously articulated in Defendant's Motion, the Complaint should be dismissed pursuant to Rules 12(b)(1) and 12(b)(6).

Dated: September 11, 2026

GORDON REES SCULLY MANSUKHANI, LLP

By: */s/ Justin Holmes*

Justin Holmes
Brian E. Middlebrook *Pro Hac Vice Forthcoming*
Joshua Hecker *Pro Hac Vice Forthcoming*
Gordon Rees Scully Mansukhani, LLP
Three Logan Square
1717 Arch Street, Suite 610
Philadelphia, PA 19103
jholmes@grsm.com
bmiddlebrook@grsm.com

*Attorneys for Defendant*
REGIONAL WOMEN'S HEALTH GROUP, LLC